IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FREDERICK M. STAPLETON,           )
                                  )
            Plaintiff,            )
                                  )
       v.                         )  No. 09 C 2405
                                  )
JOHN L. THORNTON, JR., KEVIN L.   )
THOMAS, GEORAS L. WRIGHT,         )
ANA L. VALERIANO, CHARLES F.      )
DOUGHERTY, DONALD J. OKSANEN,     )
JOHN E. GRAEBER, and CITY OF      )
CHICAGO,                          )
                                  )
            Defendants.           )

## OPINION AND ORDER

Plaintiff Frederick Stapleton alleges that defendant Chicago police officers John Thornton, Kevin Thomas, Georas Wright, Ana Valeriano, Charles Dougherty, and Donald Oksanen ("Defendant Officers") improperly stopped him for a purported vehicular violation. After the stop, defendants purportedly smelled marijuana and found some in the car. Defendant Officers arrested plaintiff and took him to the police station. When the car was searched at the police station, a hand gun purportedly was found in the car. Also named as a defendant is

Commander John Graeber, who, at the police station, approved the arrest. Plaintiff alleges he was stopped without the necessary reasonable suspicion or probable cause and the vehicle was improperly searched and seized. He also contends that he was arrested without probable cause and that two of the defendants improperly strip searched him. Plaintiff also brings a state law claim for malicious prosecution, including against defendant City of Chicago. As to defendants Thornton, Thomas, Wright, and Valeriano (the "Stopping Officers"), plaintiff has moved for partial summary judgment that it was improper to subject him to the vehicle stop. Defendant Graeber has moved for summary judgment as to the claims against him on the ground that he did not personally participate in any of the alleged misconduct. All defendants moved for partial summary judgment as to the malicious prosecution claim on the ground that plaintiff cannot satisfy the favorable termination element of that claim.

Plaintiff's motion will be considered first. On plaintiff's motion, all genuine factual disputes are resolved in defendants' favor and all reasonable inferences from the evidence are drawn in defendants' favor. *See Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274 n.1 (2009); *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010); *Stokes v. Bd. of Educ. of City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010); *Outlaw v. Newkirk*,

259 F.3d 833, 837 (7th Cir. 2001). On April 20, 2007, Defendant Officers were patrolling together, with two officers in each of three marked police cars. While patrolling at 11:45 p.m. that night, Thornton spotted plaintiff's vehicle and decided to pull plaintiff over. The vehicle belonged to plaintiff's mother. Thomas was in the car with Thornton. Wright and Valeriano were right behind them in a separate vehicle. Dougherty and Oksanen arrived soon thereafter, but after the stop had been completed. Thornton testified that he stopped plaintiff because the driver-side, exterior mirror on the car was broken. Plaintiff testified the mirror was not broken, but, on his summary judgment motion, Thornton's contrary testimony must be taken as true. All four Stopping Officers exited their vehicles and approached plaintiff's car. Thornton had his gun drawn.

The only issue raised by plaintiff's summary judgment motion is whether the Stopping Officers had any sufficient basis for stopping plaintiff because of a possible traffic offense. Whether the subsequent searches of plaintiff and the vehicle were proper, whether plaintiff's arrest for possession of cannabis was proper, and whether plaintiff was properly charged with cannabis and firearm violations are not at issue on plaintiff's motion.

> It is well-settled that police may stop a car when they have probable cause to believe that the driver has violated any traffic law. *See U.S. v. McDonald*, 453 F.3d 958, 960

> (7th Cir. 2006). Police, in fact, may conduct brief investigatory traffic stops if they have "a reasonable suspicion based on articulable facts that a crime is about to be or has been committed." *Id.* Both of these standards are evaluated on the basis of what a reasonable person in the officer's position would have perceived. **Kelley v. Myler**, 149 F.3d 641, 646 (7th Cir. 1998). "[S]o long as the circumstances confronting the police officer support the reasonable belief that a driver has committed even a minor traffic offense, the officer has probable cause to stop the driver." **U.S. v. Cashman**, 216 F.3d 582, 586 (7th Cir. 2000). There is no question that a stop can be reasonable even if the individual did not actually commit an offense, so long as the officer reasonably believed an offense occurred. *McDonald*, 453 F.3d at 960. But a stop based on a subjective belief that a law has been broken, when no violation actually occurred, is not objectively reasonable. *U.S. v. Dowthard*, 500 F.3d 567, 569 (7th Cir. 2007); *McDonald*, 453 F.3d at 961-62.

**Brinson v. Syas**, 735 F. Supp. 2d 844, 850 (N.D. Ill. 2010). *See also* **Carmichael v. Vill. of Palatine, Ill.**, 605 F.3d 451, 456 & n.4 (7th Cir. 2010).

Probable cause is an objective standard based on the information known to the officer at the time of the arrest. **Devenpeck v. Alford**, 543 U.S. 146, 153 (2004); **Jackson v. Parker**, 627 F.3d 634, 638 (7th Cir. 2010); *Carmichael*, 605 F.3d at 457. "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." **Devenpeck**, 543 U.S. at 153. "Probable cause requires only that a probability or substantial chance of criminal activity exists; it does not require the existence of criminal activity to be

more likely true than not true." *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056-7 (7th Cir. 2011). An arrest is not invalid because the arresting officer was maliciously motivated. *Devenpeck*, 543 U.S. at 154; *Mucha*, 650 F.3d at 1057. "Subjective intent of the arresting officer, however it is determined (and of course subjective intent is always determined by objective means), is simply no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest." *Devenpeck*, 543 U.S. at 154-55. See also *Jackson*, 627 F.3d at 638; *Carmichael*, 605 F.3d at 457. An arrest is lawful as long as the officer has knowledge of facts that constitute probable cause to believe some criminal offense has been committed; it need not be the same offense as the one that was the subjective basis for the arrest nor even one closely related to it. *Devenpeck*, 543 U.S. at 153-56; *United States v. Bullock*, 632 F.3d 1004, 1021 n.3 (7th Cir. 2011); *Fox v. Hayes*, 600 F.3d 819, 837 (7th Cir. 2010).

Thornton's stated ground for stopping plaintiff was that the broken mirror violated Chicago Municipal Code 9-76-120, which provides: "Every motor vehicle . . . shall be equipped with a mirror so located as to reflect to the driver a view of the roadway for a distance of at least 200 feet to the rear of such vehicle."[1]

---

[1] State law has an identical provision. 625 ILCS 5/12-502.

Thornton testified that he believed this ordinance required that a vehicle have two mirrors satisfying this requirement. Presently, defendants do not dispute that the only reasonable interpretation of this ordinance is that it only requires that there be one mirror providing the required view.[2] Defendants, though, contend that seeing a broken side-mirror provides adequate suspicion to stop a vehicle in order to ensure the vehicle has at least one satisfactory mirror. Alternatively, defendants contend the broken mirror supports a stop based on a possible "unsafe condition" violation of Chicago Municipal Code 9-40-170 ("It is unlawful for any person to drive . . . on any roadway any vehicle . . . which is in such unsafe condition as to endanger any person or property. . . .") and 625 ILCS 5/12-101 ("It is unlawful for any person to drive . . . on any highway any vehicle . . . which is in such unsafe condition as to endanger any person or property . . . .").[3]

---

[2]In ¶ 8 of their statement of additional facts [60], but not in their brief, defendants refer to 625 ILCS 5/12-503(b). Apparently, defendants are referencing subsection (b-5), which requires that vehicles with treated rear windows have two side mirrors. *See also id.* § 503(e). Defendants, though, do not cite to any evidence that plaintiff's vehicle had a rear window that was treated or otherwise blocked, nor evidence that Thornton reasonably believed that it was.

[3]Defendants also contend the stop could have been based on a cracked windshield in violation of Chicago Municipal Code 9-76-210(b), which prohibits cracks in excess of six inches. *Compare* 625 ILCS 5/12-503(e). However, the cited testimony of Thornton: (a) is equivocal as to whether there was a crack in the windshield; (b) he does not state how large the crack was; and (c) he does not testify that, prior to the stop, he was aware of the purported crack, *see*

State law provides: "It is unlawful for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person or property, or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this Chapter 12, or which is equipped in any manner in violation of this Code, or for any person to do any act forbidden or fail to perform any act required under this Chapter 12." 625 ILCS 5/12-101(a).[4] The City ordinance is essentially the same. "It is unlawful for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any roadway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person or property or which contains equipment prohibited by the traffic code or is not equipped with such lamps and other equipment in proper condition and adjustment as required in the traffic code, or which is equipped in any manner in violation of this Code." Chi. Mun. Code 9-40-170.

---

*Carmichael*, 605 F.3d at 458 (quoting ***Reynolds v. Jamison***, 488 F.3d 756, 765 (7th Cir. 2007)).

[4]"Highway," as used in the Illinois Vehicle Code, includes city streets in Chicago. 625 ILCS 5/1-126; ***Swanigan v. Trotter***, 645 F. Supp. 2d 656, 675 (N.D. Ill. 2009), *modified on other grounds*, 2011 WL 658156 (N.D. Ill. Feb. 14, 2011).

Plaintiff contends "unsafe condition," as used in these laws, means noncompliance with some other specific provision. But such a reading would be inconsistent with using "or" in the ordinance and statute. Failing to comply with specific equipment requirements of the Traffic/Vehicle Code is otherwise covered by the ordinance/statute so the "unsafe condition" clause should be understood as encompassing other possible safety issues. *See, e.g.*, **Heald v. Milburn**, 125 F.2d 8, 12 (7th Cir. 1942). If having a broken mirror made plaintiff's vehicle unsafe, or at least raised a sufficient suspicion justifying further investigation, it was not improper to make the stop based on seeing a broken mirror.

Resolving factual disputes in defendants' favor, as is required on plaintiff's motion for summary judgment, it cannot be held as a matter of law that defendants lacked knowledge of facts sufficient to support legally stopping plaintiff's vehicle. Alternatively, even if a broken, driver-side mirror is insufficient to adequately support suspicion or probable cause that an unsafe condition violation had occurred, the law is not clearly established and the Stopping Officers would be entitled to qualified immunity on a claim that they

improperly stopped plaintiff. Plaintiff's summary judgment motion will be denied.[5]

On defendants' motions for summary judgment, all genuine factual disputes are resolved and all reasonable inferences drawn in plaintiff's favor. Graeber moves for summary judgment on the ground that he was not personally responsible for any of the alleged misconduct of Defendant Officers. Plaintiff agrees that Graeber is not liable unless it is shown that he was personally responsible. "[A]n official satisfies the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). See also *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

---

[5]There is evidence supporting that plaintiff did not have a broken mirror and/or that Thornton did not see a broken mirror before pulling plaintiff over. Plaintiff may still proceed on that theory.

- 9 -

Thornton and Thomas signed plaintiff's arrest report as arresting officers and Wright signed it as an attesting officer. Oksanen and Valeriano are listed as having inventoried gun/ammo, a glove, cannabis, and a flashlight. Graeber signed the report as approving officer, signing for "approval of probable cause." The violations stated in the arrest report are unlawful use of a weapon by a felon in possession of a firearm, possession of cannabis, and a rear-view mirror equipment violation. The narrative states that plaintiff was stopped because he was observed committing a "traffic violation (operate a vehicle with a cracked/broken outside rear-view mirror)." It is further recited that the arresting officers smelled a strong odor of cannabis and observed plaintiff placing a baggie of a crushed green plant into a flashlight, which were retrieved during the investigation, as well as additional baggies with crushed green plants. It is also stated that a custodial search revealed a fully loaded revolver wrapped in a modified black glove.

On defendants' motion, it must be assumed that the mirror was not broken, there was no odor of marijuana, and there was no cannabis or handgun in the car. Plaintiff, though, provides no evidence supporting that Graeber was aware any of the information in the arrest report was false. Plaintiff contends Graeber is responsible because he should have known it was improper to stop the vehicle based on a broken mirror. Even assuming Graeber could be responsible

for approving the stop well after it had occurred, as discussed above, it was not necessarily improper to make the stop based on the broken mirror. Moreover, plaintiff does not dispute that, even if the stop was improper, it was not improper to arrest him for cannabis possession if the Defendant Officers thereafter smelled or saw marijuana such that they had probable cause to search him or the vehicle for marijuana. Even if Graeber should not have approved inclusion of the equipment violation, based on the facts he knew, there were adequate grounds to arrest plaintiff on the other two charges. No sufficient factual basis is shown for holding Graeber liable for the federal claims, nor malicious prosecution. Alternatively, the malicious prosecution claim against Graeber would be dismissed for the reasons set forth below. Graeber will be dismissed from this action.

All defendants move for summary judgment as to the malicious prosecution claim on the ground that the dismissal of charges against plaintiff did not satisfy the termination-indicative-of-innocence element of a malicious prosecution claim. In his criminal proceeding, Stapleton moved to suppress the cannabis and firearm evidence on the ground that it was not proper to stop him based on a broken mirror. Defense counsel argued the stop was improper both because there was no broken mirror or, even if there was, there was no equipment

violation because there was no evidence the rear window was blocked and the vehicle had two other functioning mirrors. July 16, 2008 Tr. at 40-43.

The Criminal Court judge's ruling from the bench was:

> [N]umber one, I know this: That the Secretary of State can, if they want, issue restrictions on your driver's license. And one of the restrictions they can put on there is that you have a side-view mirror, all right. Now, that wasn't addressed here at all. Of course, I don't think this is the right section, even if you said that the person had that restriction, and he was in violation of that restriction. I know--I know there's such a restriction because I have one of those restrictions on my own license. I have to have a side-view mirror on the passenger side. Restriction on my driver's license. But this section, here, I mean, there's all kinds of trucks that, you know, like trucks or the vans or if you have it loaded so much you can't use your rear-view mirror, you got to use your side-view mirror. So I don't--I don't think that there's any requirement that you have to have all three mirrors, and I don't think it's against the law. So the Motion to Suppress is granted.

*Id.* at 43. The Criminal Court judge--who apparently limited justification for the stop to the equipment violation stated in the arrest report--clearly suppressed the evidence solely on the basis that the search was unlawful. The ruling was not based on the cannabis or firearm not being in the car, that is, there was no finding that the unlawful items were planted by a police officer nor a finding that the unlawful items were actually possessed by the car's owner, not plaintiff Stapleton.

On August 25, 2008, the prosecutor moved to *nolle prosequi* the criminal case and the motion was granted. No reason for the dismissal was stated on the record.

A necessary element of plaintiff's malicious prosecution claim is that the prosecution terminated in his favor and that such termination was indicative of innocence. ***Deng v. Sears, Roebuck & Co.***, 552 F.3d 574, 576 (7th Cir. 2009); ***Swick v. Liautaud***, 169 Ill. 2d 504, 662 N.E.2d 1238, 1242 (1996); ***Porter v. City of Chicago***, 393 Ill. App. 3d 855, 912 N.E.2d 1262, 1265 (1st Dist. 2009); ***Blackwell v. Kalinowski***, 2011 WL 3046320 *5 (N.D. Ill. July 25, 2011). The burden is on plaintiff to show that the circumstances surrounding the dismissal are indicative of his innocence. ***Penn v. Harris***, 296 F.3d 573, 577 (7th Cir. 2002); ***Swick***, 662 N.E.2d at 1243; ***Ferguson v. City of Chicago***, 213 Ill. 2d 94, 820 N.E.2d 455, 460 (2004); ***Aguirre v. City of Chicago***, 382 Ill. App. 3d 89, 887 N.E.2d 656, 664 (1st Dist. 2008); ***Bass v. Hansen***, 2011 WL 1337092 *3 (N.D. Ill. April 7, 2011); ***Horan v. City of Chicago***, 2010 WL 2836729 *8 (N.D. Ill. July 16, 2010); ***Johnson v. Smith***, 2010 WL 1229440 *7 (N.D. Ill. March 26, 2010); ***Brown v. Star***, 494 F. Supp. 2d 914, 917 (N.D. Ill. 2007). "The circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal

prosecution." *Swick*, 662 N.E.2d at 1243; *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001); *Allen v. Berger*, 336 Ill. App. 3d 675, 784 N.E.2d 367, 372 (1st Dist. 2002); *Drain v. Barbee*, 2011 WL 3489874 *5 (N.D. Ill. Aug. 9, 2011); *Blackwell*, 2011 WL 3046320 at *5; *Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 926-27 (N.D. Ill. 2010); *Johnson v. Smith*, 2010 WL 1229440 at *6, *7; *El Ranchito, Inc. v. City of Harvey*, 207 F. Supp. 2d 814, 822 (N.D. Ill. 2002).

Absent evidence showing the suppressed evidence was otherwise unreliable or unpersuasive or other evidence compelling the conclusion that--even with the suppressed evidence--the prosecution would have dropped the case because of the accused's innocence, a *nolle prosequi* following the grant of a motion to suppress does not satisfy the favorable termination requirement for a malicious prosecution claim. *See Washington v. Summerville*, 127 F.3d 552, 557-58 (7th Cir. 1997) (innocence element not satisfied when case *nol-prossed* following the suppression of the accused's statement, which occurred after a witness to those circumstances invoked the Fifth Amendment); *Horan*, 2010 WL 2836729 at *8 (case *nol prossed* immediately after court held evidence of narcotics being found would be suppressed based on an improper search); *Johnson v. Arroyo*, 2010 WL 1195330 *3 (N.D. Ill. March 22, 2010) (case

abandoned before court ruled on motion to suppress, but even if the evidence had been suppressed, abandonment would not have been indicative of innocence because grounds for suppression unrelated to reliability or trustworthiness of evidence); *El Ranchito*, 207 F. Supp. 2d at 822-23 (plaintiff claimed he was framed by police who planted drugs, but case *nol prossed* based on suppression of evidence obtained in illegal search with no finding regarding merits of the incriminating evidence); ***Thomas v. Friedrich***, 2000 WL 562473 *5 (N.D. Ill. May 9, 2000) (criminal case dismissed after inculpatory statements and evidence suppressed because illegally obtained with no finding the evidence was unreliable or untrustworthy). Plaintiff fails to meet his burden of providing evidence supporting that the favorable termination of his criminal case was indicative of innocence. Summary judgment will be granted dismissing the Count IV malicious prosecution claim. Since Count IV is the only claim against defendant City of Chicago, the City will be dismissed from this action.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment [51] is denied. Defendants' motions for summary judgment [57, 85] are granted. All claims against defendants John Graeber and City of Chicago are dismissed and these two defendants are dismissed from the action. Count IV is dismissed. In open court on March 22, 2012 at 11:00 a.m., the parties shall submit

an original and one copy of a final pretrial order in full compliance with Local Rule 16.1 and Local Rule Form 16.1.1, including trial briefs, proposed voir dire questions, motions in limine with supporting briefs, and proposed jury instructions.

ENTER:

William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: JANUARY 26, 2012